**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUN 11 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-776 |
| Plaintiff - Appellee, | |
| v. | D.C. No. 2:18-cr-00301-APG-VCF-2 |
| NOSA FRANK OBAYANDO, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted May 17, 2024
San Francisco, California

Before: LEE and BRESS, Circuit Judges, and KANE, District Judge.[**]

Nosa Frank Obayando appeals his convictions for mail theft, unauthorized

use of an access device, and aggravated identity theft stemming from a fraudulent

mail scheme. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

We affirm Obayando's convictions and sentencing enhancement, but vacate the

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Yvette Kane, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

order of restitution and standard conditions of supervised release, and remand for the purpose of reconsidering those issues.

1.  Because Obayando's convictions rely on the theft of mail from a mailbox at Splendid Manor on July 21, 2017, he challenges the admission of photographs that appear to depict him removing mail from Splendid Manor on three uncharged dates.  We review de novo whether evidence is other act evidence within the meaning of Federal Rule of Evidence 404(b) but review for abuse of discretion the admission of evidence under that rule, *United States v. Carpenter*, 923 F.3d 1172, 1180–81 (9th Cir. 2019), as well as under Federal Rule of Evidence 403, *United States v. Erickson*, 75 F.3d 470, 476 (9th Cir. 1996).

"Evidence of any other crime, wrong, or act is not admissible to prove a person's character," Fed. R. Evid. 404(b)(1), but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404(b)(2). Evidence of other acts is admissible under Rule 404(b) if it "(1) tends to prove a material point in issue; (2) is not too remote in time; (3) is proven with evidence sufficient to show that the act was committed; and (4) if admitted to prove intent, is similar to the offense charged." *United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002).

Assuming without deciding that the uncharged mail theft evidence falls

within Rule 404(b), the district court did not abuse its discretion in allowing this evidence because it was admissible to prove identity. To use other act evidence as proof of identity, "[t]he offenses must be so similar in their circumstances as to guarantee a reasonable likelihood that they were committed by the same person." *United States v. Quinn*, 18 F.3d 1461, 1466 (9th Cir. 1994). The photographs of uncharged mail thefts on July 2, July 9, and August 4, 2017, depicting Obayando accessing the same unused Splendid Manor mailbox as the one accessed by him on July 21, 2017, meet this test. *Id.*; *see Quinn*, 18 F.3d at 1466 (concluding that, where the charged acts and the other acts were of the same nature, "featured a man of [the defendant's] approximate size" and were "close to each other in time and location," the other acts evidence was admissible under Rule 404(b) as relevant to the identity of the perpetrator of the charged acts). Further, based on the photographs and Inspector Hudson's corroborating testimony, a "jury could reasonably find" that Obayando committed the other acts by "a preponderance of the evidence." *Huddleston v. United States*, 485 U.S. 681, 690 (1988). And aside from identity, the photographs served the additional permissible purposes under Rule 404(b) of demonstrating Obayando's intent and opportunity.

The district court likewise did not abuse its discretion by finding that the probative value of the other acts evidence was not substantially outweighed by unfair prejudice under Rule 403. The evidence was relevant in establishing

3

Obayando's participation in the identity theft scheme, and the resulting prejudice was not unfair. *See United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) ("Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403.").

2.     Obayando next challenges the sufficiency of evidence to support his convictions. We review de novo claims of insufficient evidence, *United States v. Loveland*, 825 F.3d 555, 558 (9th Cir. 2016), and we ask "whether 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Sufficient evidence supported the Count 3 mail theft charge because a rational juror could rely on Inspector Hudson's testimony that he got a "clear look" at Obayando removing mail from the Splendid Manor mailbox on July 21, 2017, and subsequently disposing of at least some portion of that mail at a nearby park. *See* 18 U.S.C. § 1708; *United States v. Terry*, 760 F.2d 939, 941 (9th Cir. 1985) (finding eyewitness identification sufficient to sustain convictions).

As to the Count Five (unauthorized use of an access device) and Count Seven (aggravated identity theft) charges, a rational juror could find beyond a

4

reasonable doubt that, in using Erde's ATM card, Obayando had an "intent to defraud" and committed knowing use "without lawful authority," *see* 18 U.S.C. §§ 1029(e)(3), 1028A(a)(1), based on inferences drawn from his conduct. This included Obayando's repeated withdrawals ($500 per day four times in one week) from Erde's U.S. Bank account, despite her testimony that she did not give anyone permission to access the account, as well as the evidence of charged mail theft. *See United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir. 1979) (stating that intent "may be inferred from the defendant's statements and conduct").

3. Obayando next challenges the district court's application of an eight-level sentencing enhancement pursuant to United States Sentencing Guidelines § 2B1.1(b)(1)(E) and § 1B1.3(a)(1)(B) for a loss amount greater than $95,000. The asserted losses were approximately $135,000, consisting of alleged loss to three individuals whose mail was forwarded to the Las Vegas community mailboxes: Chabalko ($14,469.19), Asher ($18,591), and Hande ($100,000). The district court attributed these amounts as loss from "relevant conduct" under U.S.S.G. § 1B1.3(a)(1)(B). We review "the district court's interpretation of the Sentencing Guidelines de novo, its factual findings for clear error, and its application of the Guidelines to the facts for abuse of discretion." *United States v. Reiche*, 54 F.4th

1093, 1098 (9th Cir. 2022) (internal quotation marks omitted).[1]

a.      The district court did not err in finding the losses at issue attributable to Obayando.   The Guidelines permit the inclusion of loss stemming from the "acts and omissions of others" in the circumstances of a "jointly undertaken criminal activity," defined as "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy."  U.S.S.G. § 1B1.3(a)(1)(B).  "[I]n the case of a jointly undertaken criminal activity," the court shall determine "specific offense characteristics" (such as the amount of loss under § 2B1.1(b)) based on "all acts or omissions of others that were—(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with the criminal activity . . . ."  U.S.S.G. § 1B1.3(a)(1)(B).

First, contrary to Obayando's argument, the district court applied the correct U.S.S.G. § 1B1.3(a)(1) standard.  Second, the facts proven at trial demonstrate that the losses to the three individuals stemming from the identity theft scheme were based on jointly undertaken criminal activity.  Obayando's efforts to steal mail in concert with his co-defendant Ariawhorai to obtain personal information used for identity theft is demonstrated by the fact that both men (and only these men) were

[1]  The parties disagree about whether plain error or harmless error review applies. Because Obayando loses under either standard, we assume without deciding that Obayando preserved his challenge to the loss enhancement.

photographed stealing mail from the two community mailboxes and that both men were subsequently photographed making ATM withdrawals from Erde's U.S. Bank account. Third, the scope of the jointly undertaken criminal activity involved stealing mail, including personal information, and subsequently using that information to commit financial fraud, and the fraud perpetrated against the three victims was in furtherance of that activity. Finally, it was reasonably foreseeable that individuals whose mail was fraudulently forwarded to one of the two community mailboxes during the timeframe of Obayando's conduct would be defrauded. As the district court stated, "it would be reasonably foreseeable that someone would use a debit card on a fake account anywhere."

b.     The government met its burden to prove the fact of loss under Guideline § 2B1.1(b)(1)(E). First, when reimbursement is "not instantaneous," individuals may suffer pecuniary loss within the meaning of the Guidelines. *United States v. Pham*, 545 F.3d 712, 719–20 (9th Cir. 2008). Because the documents presented at sentencing reflect that reimbursement for the loss suffered by Hande was "not instantaneous," and Hande's loss is sufficient for the sentencing enhancement applied to Obayando, Obayando's reliance on *Pham* is unavailing. Second, the document indicating Hande's loss contained "substantive indicia of reliability" sufficient to "safeguard the defendant's right not to be sentenced on the basis of unreliable or false information," and under this standard,

7

"hearsay from a source that is self-demonstrably reliable is permissible on its own." *United States v. Franklin*, 18 F.4th 1105, 1125 (9th Cir. 2021). This is "an essentially factual issue" reviewed for clear error. *Id.* Here, the amount of detail included in the document (apparently authored by Hande's spouse) characterizing the circumstances of the fraudulent activity—consisting of dates, account numbers, details of transactions, and police report and fraud claim numbers—shows that the document was "self-demonstrably reliable," *id.*, or, at a minimum, the district court's conclusion that it was is not "illogical, implausible, or without support in the record" so as to constitute clear error. *United States v. Spangle*, 626 F.3d 488, 497 (9th Cir. 2010).

4.      The district court plainly erred by ordering restitution in an amount of $91,960.46 based in large part ($89,060.46) on non-offense conduct. Where a defendant objects to an order of restitution for the first time on appeal, we review this aspect of the sentence for plain error. *United States v. Van Alstyne*, 584 F.3d 803, 819 (9th Cir. 2009). Plain error is "(1) error, (2) that is plain, and (3) that affects substantial rights"—if "all three conditions are met," we may "notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Jordan*, 256 F.3d 922, 926 (9th Cir. 2001) (quoting *Johnson v. United States*, 520 U.S. 461, 466–67 (1997)).

8

Under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, a district court "may award restitution . . . only for loss that flows directly from the specific conduct that is the basis of the offense of conviction." *United States v. May*, 706 F.3d 1209, 1214 (9th Cir. 2013) (internal quotation marks omitted). An exception applies—and permits restitution for conduct beyond the offense of conviction—if the offense "involves as an element a scheme, conspiracy, or pattern of criminal activity," 18 U.S.C. § 3663A(a)(2), a circumstance which the government concedes does not apply here.

We find the restitution portion of Obayando's sentence plainly erroneous because restitution is limited to "loss caused by the specific conduct that is the basis for the offense of conviction," *United States v. Alvarez*, 835 F.3d 1180, 1185–86 (9th Cir. 2016)—here, a loss amount of $2,900 suffered by U.S. Bank. The restitution order exceeded the MVRA's statutory authorization by awarding restitution for loss that does not flow directly from the offense of conviction. *See United States v. Anderson*, 741 F.3d 938, 954 (9th Cir. 2013) (finding plainly erroneous district court's award of restitution in excess of victim's actual losses because the award "affected substantial rights and the fundamental fairness of the proceeding given that they may have vastly inflated the restitution in excess of [the victim's] actual losses"); *United States v. Rizk*, 660 F.3d 1125, 1137 (9th Cir. 2011) (same). Accordingly, we vacate the restitution order and remand with

9

instructions to impose restitution in an amount of loss attributable only to the conduct that is the basis of the offense of conviction.

5. The parties agree that the district court's failure to orally pronounce thirteen discretionary standard conditions of supervised release requires remand pursuant to *United States v. Montoya*, 82 F.4th 640 (9th Cir. 2024) (en banc). Accordingly, we vacate the thirteen discretionary standard conditions of supervised release included in Obayando's written judgment and remand "so that the district court can cure its error by orally pronouncing any of the standard conditions of supervised release that it chooses to impose and by giving [Obayando] a chance to object to them." *Id.* at 656.

**AFFIRMED in part; VACATED in part; and REMANDED.**